UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **KARRINE MILHEM,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | )   CAUSE NO. 1:20-cv-00488-SLC |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** *sued as Kilolo Kijakazi,* | ) |
| *Commissioner of Social Security,*[1] | ) |
| | ) |
|     **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Karrine Milhem appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Milhem applied for DIB and SSI on November 30, 2018, alleging disability as of November 19, 2018.[2] (ECF 16 Administrative Record ("AR") 10, 224-36). Milhem's claim was denied initially and upon reconsideration. (AR 10, 82-107, 110-37, 157-65). On May 29, 2020, administrative law judge ("ALJ") Kathleen Winters conducted an administrative hearing at which Milhem, who was represented by counsel, and a vocational expert ("VE") testified. (AR

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

[2] Regardless of a claimant's claimed onset date, SSI is not payable until the month following the month in which a claimant files her SSI application. *See* 20 C.F.R. § 416.335. Therefore, the first month Milhem could be eligible to receive SSI is December 2018, given that she applied for SSI in November 2018.

45-72). On June 24, 2020, the ALJ rendered an unfavorable decision to Milhem, concluding that she was not disabled because she could perform a significant number of jobs in the national economy despite the limitations caused by her impairments. (AR 10-24). The Appeals Council denied Milhem's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Milhem filed a complaint with this Court on December 24, 2020, seeking relief from the Commissioner's decision. (ECF 1). In her opening brief, Milhem argues that: (1) the ALJ's step-five finding is not supported by substantial evidence because she failed to identify a significant number of jobs that Milhem could perform despite her impairments; and (2) that the ALJ erred in finding that Milhem did not meet Listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (ECF 20 at 7); *see* 20 C.F.R. Subpart P, App'x 1 §§ 12.03, 12.04, 12.06. The Commissioner timely filed a response brief in opposition to Milhem's arguments. (ECF 23). Milhem failed to file a reply brief, and her time to do so has now passed. (*See* ECF 22).

At the time of the ALJ's decision, Milhem was thirty-nine years old (AR 224), had a high school education and attended at least three years of college (AR 59, 60, 287), and had past relevant work experience as a canvasser, receptionist, portrait photographer, and graphic designer (AR 22, 67). In her application, Milhem alleged disability due to various physical and mental conditions, including heart problems, back problems, alcohol withdrawal, anxiety, depression, and hallucinations. (AR 286).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III.  ANALYSIS

### A.  The Law

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

3

impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy.[3] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The Commissioner's Final Decision

On June 24, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 10-24). At step one, the ALJ concluded that Milhem had not engaged in

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

substantial gainful activity after her alleged onset date of November 19, 2018. (AR 12). At step two, the ALJ found that Milhem had the following severe impairments: status post fusion of the cervical spine; postural orthostatic tachycardia syndrome; major depressive disorder, recurrent, moderate; unspecified psychosis; and anxiety disorder, unspecified. (*Id.*). At step three, the ALJ concluded that Milhem did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 13). The ALJ then assigned Milhem the following RFC:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with work that can be learned in 30 days or less, with simple routine tasks, simple work related decisions, routine work place changes, is able to remain on task in two-hour increments; with occasional interaction with coworkers, supervisors, and the general public.

(AR 17).

The ALJ found at step four that given the foregoing RFC, Milhem could not perform any of her past relevant work. (AR 22). At step five, however, the ALJ concluded that Milhem could perform a significant number of unskilled sedentary jobs in the national economy, including addresser, 19,000 jobs in the national economy; table worker, 23,000 jobs in the national economy; and document preparer, 47,000 jobs in the national economy. (AR 23-24). Therefore, Milhem's applications for DIB and SSI were denied. (AR 24).

### C. The ALJ's Step-Five Determination

In her first argument, Milhem challenges the ALJ's step-five determination. (ECF 20 at 8-13). As already explained, a plaintiff seeking DIB and SSI bears the burden of proof at steps one through four of the ALJ's sequential five-part inquiry; the burden then shifts to the Commissioner at step five. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At this final step, the Commissioner must establish that the plaintiff's RFC allows her to

5

engage in work found in "significant numbers" in the national economy. *Liskowitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009); *see* 20 C.F.R. §§ 404.1566, 416.966.

Milhem argues that the ALJ failed to carry her burden to identify a significant number of jobs in the national economy that she is capable of performing despite the limitations caused by her impairments. (ECF 20 at 10-13). The ALJ concluded at step five that Milhem was not disabled based on the VE's testimony that a hypothetical individual of Milhem's age, education, work experience, and RFC could still perform a significant number of jobs in the national economy. (AR 22-23). Specifically, the VE testified that such individual could perform the following representative jobs: addresser, 19,000 jobs in the national economy; table worker, 23,000 jobs in the national economy; and document preparer, 47,000 jobs in the national economy. (AR 24, 69). Milhem contends that the ALJ failed to carry her step-five burden because the total number of representative jobs cited by the VE—89,000 jobs nationally—accounts for just .0567% of the 156,803,000 total jobs in the national economy. (ECF 20 at 12 (citing *Sally S. v. Berryhill*, No. 2:18cv460, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019)).

"The Seventh Circuit [Court of Appeals] has not affirmatively established the threshold for the number of jobs in the national economy that qualifies as significant." *John C. v. Saul*, No. 4:19-cv-04111-SLD-JEH, 2021 WL 794780, at *5 (C.D. Ill. Mar. 2, 2021). In *Weatherbee v. Astrue*, the Seventh Circuit found that 140,000 representative jobs in the national economy was "well above the threshold for significance," yet did not definitively identify an actual threshold. 649 F.3d 565, 572 (7th Cir. 2011); *see also Angela L. v. Saul*, No. 1:20-cv-00481-SEB-DML, 2021 WL 2843207, at *5 (S.D. Ind. July 7, 2021); *John C.*, 2021 WL 794780, at *5. In *Primm v.*

6

*Saul*, the Seventh Circuit found that 110,000 jobs in the national economy was a significant number. 789 F. App'x 539, 546 (7th Cir. 2019). Also, in *Collins v. Berryhill*, the Seventh Circuit found that just 55,000 jobs was a significant number of jobs nationally. 743 F. App'x 21, 25-26 (7th Cir. 2018).

But the *Primm* court relied on *Liskowitz*, a case involving regional, rather than national, numbers. *Primm*, 789 F. App'x at 546; *see Liskowitz*, 559 F.3d at 743 (finding that 4,000 jobs in the Milwaukee area was a significant number, and commenting that "it appears to be well-established that 1,000 jobs is a significant number" (collecting cases)). The *Collins* court, indirectly, did as well. 743 F. App'x at 25-26 (relying on *Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016), which in turn relied on *Liskowitz*). At least one judge in this judicial circuit has indicated that "reliance on *Liskowitz*'s regional threshold is . . . suspect (and, by extension, so is the reliance on *Primm*)" when considering a claimant's argument challenging the number of national jobs identified. *James A. v. Saul*, 471 F. Supp. 3d 856, 859-60 (N.D. Ind. July 10, 2020). Therefore, while *Primm* and *Collins* provide some guidance, they are not without their vulnerabilities.

"[D]istrict courts within the circuit—applying national numbers—have found as many as 120,350 jobs to not meet the burden, and as few as 17,700 jobs to be significant." *Angela L.*, 2021 WL 2843207, at *5 (citing *John C.*, 2021 WL 794780, at *5); *compare Sally S.*, 2019 WL 3335033, at *11 (120,350 jobs nationally is not a significant number), *with Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 jobs nationally is a significant number). Thus, this circuit lacks clear guidance on what constitutes a "significant number" of jobs in the national economy. *See Sundsmo v. Saul*, No. 20-cv-100-

7

wmc, 2020 WL 6817112, at *7 (W.D. Wis. Nov. 20, 2020) (concluding 67,327 jobs nationally was a significant number, observing that "this court has no ready guidance, other than to note that the ALJ's reliance of evidence of jobs in the national economy in the tens of thousands to find the claimant capable of full-time work appears consistent with decades of case law and the applicable regulations . . . ."); *see also Ellis v Kijakazi*, No. 20-CV-719, 2021 WL 3514701, at *5 (E.D. Wis. Aug. 9, 2021) (observing the "lack of clarity from the Seventh Circuit regarding . . . 'significant numbers'" when concluding that 14,500 nationally was not a significant number).

The undersigned Magistrate Judge faced a similar argument last year in *Knapp v. Saul*, No. 1:20-cv-00011-PPS-SLC, 2021 WL 536121, at *4-5 (N.D. Ind. Jan. 27, 2021), *R. & R. adopted by* 2021 WL 536483 (N.D. Ind. Feb. 12, 2021).  There, I rejected the claimant's argument that 120,000 jobs nationally was not a significant number.  *Id.*  In doing so, I commented that "even when considering just the three jobs identified by the VE, the ALJ provided a sufficient number of jobs through his identification of 29,000 polishing machine operator jobs, 22,000 sorting machine operator jobs, and 16,500 wire insulator jobs." *Id.* at *4.  Thus, at least in the facts presented in *Knapp* and under the law at the time, I viewed that 67,500 jobs in the national economy would still be a significant number of jobs.  *Id.*; *see also Sundsmo*, 2020 WL 6817112, at *7 (finding that 67,327 jobs nationally was a significant number of jobs); *Angela L.*, 2021 WL 2843207, at *6 (finding that 53,200 jobs nationally was a significant number of jobs). Neither party here has presented me with a persuasive reason to depart from that viewpoint now.

Therefore, given my prior Opinion and Order in *Knapp*, and the lack of clarity in the circuit on the issue, I conclude that 89,000 jobs is a "significant number" of jobs for purposes of the ALJ's step-five determination in this case.

*D.  Listings 12.03, 12.04, and 12.06*

Milhem also argues that the ALJ erred by failing to find that she met Listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (ECF 20 at 14-15). Ultimately, Milhem's second argument is also unpersuasive.

"Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R Part 404, Subpart P, App'x 1)). "The listings specify the criteria for impairments that are considered presumptively disabling." *Id*. (citing 20 C.F.R. § 404.1525(a)). To meet or equal a listed impairment, a claimant must satisfy *all* of the criteria of the listed impairment. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). The claimant bears the burden of proving her condition meets or equals a listed impairment. *Ribaudo*, 458 F.3d at 583; *Maggard*, 167 F.3d at 380.

At step three, the ALJ explained that to meet Listing 12.03, 12.04, or 12.06, a claimant must show that she has at least one extreme and two marked limitations in the "paragraph B" criteria—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (AR 14). The ALJ further explained that a claimant could also meet these Listings by satisfying the "paragraph C" criteria, which the ALJ summarized as follows:

> [T]he claimant's mental disorder must be "serious and persistent" and medically documented over a period of at least two years, with evidence of both (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs

9

>    of the claimant's mental disorder and (2) marginal adjustment, which means
>    minimal capacity to adapt to changes in the environment or to demands that are
>    not already part of daily life.

(AR 16).[4]

Milhem argues that she meets Listings 12.03, 12.04, and 12.06 due to her diagnoses of major depressive disorder, recurrent, moderate; unspecified psychosis; and anxiety disorder, unspecified, assigned by Shivam Dubey, M.D., her treating psychiatrist, in January 2019. (ECF 20 at 14-15 (citing AR 565, 649-55)). Of course, "the mere diagnosis of an impairment does not establish the severity of the impairment." *Philpott v. Colvin*, No.1:13-cv-10708-MJS-DKL, 2014 WL 4244299, at *4 (S.D. Ind. Aug. 26, 2014) (citations and internal quotation marks omitted). But Milhem also cites the mental impairment questionnaire Dr. Dubey completed in July 2019, which reflects: (1) "marked" limitations in the areas of interacting with others and understanding, remembering, or applying information; and "extreme" limitations in adapting or managing oneself and concentrating, persisting, or maintaining pace; and (2) a "serious and persistent" disorder with a minimal capacity to adapt to changes in environment or demands that were not already part of her daily life. (ECF 20 at14 (citing AR 14, 649-55)).

At step 3 (and also when assigning the RFC thereafter), the ALJ discussed at length Dr. Dubey's July 2019 questionnaire that endorsed "marked" and "extreme" limitations in the "paragraph B" criteria. (AR 15-17, 19-22). The ALJ, however, ultimately did not adopt these limitations, finding them inconsistent with Dr. Dubey's own examination findings, the record as

---

[4] Milhem does not take issue with the ALJ's description of the "paragraph B" and "paragraph C" criteria of the Listings.

a whole, and Milhem's documented improvement after July 2019.[5] (*Id.*). The ALJ instead concluded that Milhem had "mild" limitations in adapting or managing oneself and "moderate" limitations in interacting with others; understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace. (AR 15). Likewise, the ALJ concluded that Milhem did not satisfy the "paragraph C" criteria of the Listings either, also declining to adopt Dr. Dubey's opinion in that regard. Specifically, the ALJ explained:

> Dr. Dubey endorsed the claimant had a "serious and persistent["] disorder, and she had minimal capacity to adapt to changes in her environment or to demands that were not already part of her daily life. Yet, aside from the July 2019 appointment where the claimant's mental status deteriorated – the same day Dr. Dubey indicated the claimant only achieved marginal adjustment, and the date the disability paperwork was completed – as described above within the "paragraph B" discussion, the treatment records indicate she functioned fairly well with routine medication dose adjustments.

(AR 16-17 (internal citation omitted); *see also* AR 19, 21-22).

A brief summary of the record shows that the ALJ adequately articulated, and supported with substantial evidence, her decision not to adopt the limitations in Dr. Dubey's July 2019 questionnaire when making her step-three finding. In January 2019, Milhem sought treatment for substance abuse at the Bowen Center. (AR 418-26). She presented as "stable" to the intake

---

[5] In assessing medical opinion evidence, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the ALJ is to consider the following factors when determining the proper weight to apply to the opinion: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner. 20 C.F.R. §§ 404.1520c(c), 416.920c(c); *see Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021), *R. & R. adopted by Bart E. v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021). "Although the ALJ must consider all of these factors, he need only explain how he considered supportability and consistency." *Kaehr v. Saul*, No. 3:19-CV-1171-PPS, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021) ("[T]he factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." (ellipses in original) (quoting 20 C.F.R. §§ 404.1529c(b)(2), 416.920c(a))).

examiner, but reported having auditory and visual hallucinations and a lack of medication management. (*Id.*). Dr. Dubey performed an evaluation that same month. (AR 15, 562). Milhem reported having low energy, irritability, a sad mood, intermittent anxiety, sleep problems, racing thoughts, anger problems, poor focus, daily visual and auditory hallucinations since childhood, and a past psychiatric hospitalization in 2016 for alcoholism and hallucinations. (AR 562-63). A mental status exam revealed good eye contact and normal speech; a sad mood and restricted affect; fair judgment, insight, and concentration; and intact memory. (AR 564-65). She denied delusions, hallucinations, suicidal or homicidal ideations, or paranoia. (AR 564). Dr. Dubey diagnosed her with major depressive disorder, recurrent, moderate; psychosis unspecified; and anxiety unspecified. (AR 565, 567). She was prescribed Seroquel and assigned a current Global Assessment of Functioning (GAF) score of 60, reflective of moderate symptoms, with a highest- past-year GAF of 70, reflective of mild symptoms.[6] (AR 15, 566).

In February 2019, Milhem reported to Dr. Dubey that Seroquel had helped calm her hallucinations and to sleep better, but her mood and anxiety were unchanged. (AR 15, 557). A mental status examination revealed appropriate and cooperative behavior, good eye contact, irritable mood, and fair judgment, insight, and concentration. (AR 559-60). She had no hallucinations, delusions, or suicidal or homicidal ideations. (AR 560). Dr. Dubey prescribed

---

[6] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* A GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. *Id.* "The American Psychiatric Association no longer uses the GAF as a metric." *Spencer v. Colvin*, No. 13-cv-1487, 2015 WL 684545, at *17 n.5 (C.D. Ill. Feb. 17, 2015) (citing Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). However, Dr. Dubey used GAF scores in assessing Milhem, so they are relevant here. *See id.* (citing *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Knapp v. Berryhill*, 741 F. App'x 324, 329 (7th Cir. 2018); *Elizabeth A.D. v. Saul*, No. 19 C 6024, 2021 WL 148831, at *11 (N.D. Ill. Jan. 15, 2021).

Zoloft. (AR 561). The next month, Milhem reported that her medications were helping with no side effects, and that her psychosis and anxiety were controlled and her mood was stable. (AR 15-16, 631-32). A mental status exam revealed a euthymic mood and appropriate affect, appropriate behavior, good eye contact, good concentration, and fair judgment and insight. (AR 633-34). In April 2019, Milhem's mood and anxiety remained stable and controlled, but she reported having hallucinations in the past month; a mental status examination was unchanged. (AR 16, 636-39). Her Seroquel dosage was increased. (AR 640). Two weeks later, Milhem reported a stable mood, manageable anxiety and psychosis, and good sleep. (AR 16, 642-43). A mental status exam was similar to her past appointment with no suicidal or homicidal ideations, hallucinations, or delusions. (AR 645). She was instructed to return in three months. (AR 646).

In July 2019, Milhem reported increased stressors (including disability paperwork, finances, and family issues such as an incarcerated husband, ill mother, and autistic son) and a return of mood swings, poor sleep, anxiety, and hallucinations. (AR 15, 657). A mental status examination revealed a depressed and anxious mood but appropriate affect, auditory hallucinations, and fair judgment, insight, and concentration. (AR 15, 659-60). Her Seroquel and Zoloft dosages were increased. (AR 15, 660). That same day, Dr. Dubey completed a mental impairment questionnaire on Milhem's behalf, indicating "marked" limitations in the areas of interacting with others and understanding, remembering, or applying information; "extreme" limitations in adapting or managing onself and in concentrating, persisting, or maintaining pace; a "serious and persistent" mental disorder; and "minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." (AR 654; *see also* AR 15).

13

Two months later, Milhem reported a stable mood, mild anxiety, poor focus, and stable sleep; she denied any hallucinations, suicidal or homicidal ideation, or paranoia. (AR 16, 662). A mental status examination revealed cooperative and appropriate behavior, euthymic mood and appropriate affect, no hallucinations, and fair judgment, insight, and concentration. (AR 665). Dr. Dubey indicated that Milhem's anxiety, depression, and psychosis were controlled. (AR 663, 665).

Milhem also participated in monthly mental health counseling at the Bowen Center from December 2018 through May 2019. (AR 16, 416-19, 540-49, 619-24). The counselor indicated that Milhem "presented as stable" during the sessions (AR 417, 419, 540-46, 548-49, 619, 621-24), with the exception of February 2019 where she "presented as healthy and happy" (AR 547), and March 2019 where she "presented as fatigued" (AR 620). In April 2019 Milhem reported recent hallucinations (AR 621) but still "presented as stable" (AR 622).

The ALJ discussed the foregoing medical evidence and concluded that while Milhem experienced an exacerbation of her symptoms in July 2019—coincidentally, when Dr. Dubey completed the mental impairment questionnaire on her behalf—the treatment record over multiple appointments reflected that she functioned fairly well with occasional adjustments to her medications. (AR 15-17, 19-22). The ALJ further observed that two months after completing the questionnaire, Dr. Dubey documented that Milhem's conditions were controlled. (AR 16, 22; *see* AR 663, 665). The ALJ also noted that the counseling treatment notes did not document any concerns at sessions consistent with "marked" or "extreme" limitations. (AR 16, 22). As such, the ALJ stated that Dr. Dubey's limitations, "standing alone, do not establish serious limitations on a sustained basis for 12 continuous months," and that with respect to the

14

Listings, "the degree of limitation in an area of mental functioning is not established by a single piece of information." (AR 16 (citation and internal quotation marks omitted)).

Additionally, the ALJ observed that Dr. Dubey's July 2019 questionnaire was not particularly consistent with his own treatment notes. (AR 20). For example, while Dr. Dubey opined in the questionnaire that Milhem had "extreme" limitations in concentrating, persisting, or maintaining pace and "marked" limitations in interacting with others, he routinely documented in his treatment notes that she had "fair" or "good" attention and concentration and "cooperative" and "appropriate" behavior. (*Id.*; *compare* AR 654, *with* AR 559-60, 633-34, 638-39, 644-45, 659-60, 664-65).

The ALJ instead found the less-restrictive opinions of Ken Lovko, Ph.D., and Maura Clark, Ph.D., the state agency psychologists who reviewed Milhem's record in March 2019 and June 2019, respectively, more consistent with the evidence of record. (AR 20-21; *see* AR 88-92, 101-05, 131-35); *see Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (stating that it is the ALJ's responsibility, not the court's, to weigh medical source opinions and resolve any conflicts in the medical evidence). These doctors concluded that Milhem did not satisfy Listings 12.03, 12.04, or 12.06, and opined that she could understand, carry out, and remember simple instructions; make judgments commensurate with functions of simple, repetitive tasks; respond appropriately to brief supervision and interactions with coworkers and work situations; and deal with routine changes in a work setting.[7] (AR 20-21; *see* AR 88-92, 101-05, 131-35). Thus, the

---

[7] Milhem argues only that the ALJ erred at step 3 by failing to find that she met Listings 12.03, 12.04, and 12.06 by adopting the limitations in Dr. Dubey's mental impairment questionnaire. (*See* ECF 20 at 7, 14-15). She does not otherwise challenge the mental RFC crafted by the ALJ or the weight the ALJ applied to Dr. Dubey's opinion, and thus, she has waived any such arguments. *See, e.g.*, *Tritch v. Kijakazi*, No. 1:20-cv-00331-SLC, 2021 WL 4438188, at *2 n.2 (N.D. Ind. Sept. 28, 2021) ("Tritch does not directly challenge the ALJ's assessment of the credibility of her symptom testimony, and thus, she has waived that argument.'); *Swanson v. Apfel*, No. IP 99-1159-

ALJ's step-three finding is supported by substantial evidence.

In sum, the ALJ thoroughly considered the limitations set forth in Dr. Dubey's July 2019 mental impairment questionnaire at step three when determining whether Milhem met or equaled Listings 12.03, 12.04, and 12.06.  In doing so, the ALJ sufficiently explained, and cited supporting evidence, why she declined to adopt Dr. Dubey's limitations, finding them inconsistent with other material evidence of record and Dr. Dubey's own treatment notes.  The ALJ's conclusion that the opinions of the state agency psychologists were more consistent with the evidence is adequately articulated and supported.  Consequently, as with the ALJ's step-five finding, the ALJ's step-three determination will be affirmed.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.  The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Milhem.

SO ORDERED.

Entered this 28th day of January 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

C H/G, 2000 WL 1206587, at *4 (Aug. 7, 2000) (deeming arguments waived by the plaintiff's failure to raise them in her opening brief).